UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SHOCKWAVE CARGO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-CV-3479-B** |
| | § | |
| **CARGOBARN INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant CargoBarn Inc.'s Motion to Dismiss (Doc. 11). Having reviewed the briefing and applicable law, the Court **DENIES** the Motion. Plaintiff Shockwave Cargo ("Shockwave")'s claim will proceed.

**I.**

**BACKGROUND**

Shockwave hired CargoBarn to transport equipment from New Jersey to Texas. Through mishandling in the final stages of delivery, that equipment arrived in disrepair. The present action ensued.

Shockwave performs logistics work for the U.S. Transportation Safety Administration ("TSA"). Doc. 8, Am. Compl. ¶ 9. TSA hired Shockwave to arrange shipment of specialized baggage scanners from New Jersey to TSA's distribution center in Coppell, Texas. *Id.* ¶¶ 1, 10. Shockwave, in turn, hired CargoBarn to provide the actual transportation services, including by procuring a driver. *See id.* ¶¶ 1, 12. Due to the scanner's "sensitive and valuable" nature, Shockwave and

CargoBarn agreed that the scanners "needed to be transported in a careful manner to ensure [their] safe delivery." *Id.* ¶¶ 12-13.

CargoBarn then procured Defendant ACS Transport LLC ("ACS") to do the physical delivery. *See id.* ¶ 14. But ACS, and its driver Defendant Antonio Canales, remained at all times supervised and controlled by CargoBarn. *See id.* ¶ 15.

After a two-day trip, Canales arrived at TSA's distribution center with the scanners. *See id.* ¶¶ 16, 19. Canales unloaded the scanners outside the facility, removing straps and protective tarps that had been placed over the scanners during pick up. *See id.* ¶¶ 17, 20. Only then did Canales, along with ACS and CargoBarn, realize that because it was Veterans Day, the distribution facility was closed. *See id.* ¶¶ 19-20. Canales contacted CargoBarn for instructions, and CargoBarn informed Canales to leave the scanners, now uncovered and unprotected, outside the facility. *See id.* ¶¶ 21, 23. Canales initially waited with the scanners. *Id.* ¶ 22. But he soon realized that no one would be arriving to accept delivery that day, so he left the facility, leaving the scanners outside in now-rainy weather conditions. *See id.* ¶¶ 22-23.

Because Veterans Day fell on a Friday, the scanners remained outside the facility until Monday—the next business day. *See id.* ¶¶ 19, 24. And it rained all weekend. *Id.* ¶ 24. So, when TSA employees accepted delivery the following Monday, they noticed possible rain damage to the scanners and required Shockwave "to address and mitigate" the damage. *Id.* ¶¶ 24-27. To do so, Shockwave hired an engineering firm and thereby incurred $138,000 in expenses. *Id.* ¶¶ 28-29.

Shockwave then brought the present action alleging breach of contract against CargoBarn, SheerTrans Solutions LLC (CargoBarn's successor), ACS, and Canales. *See id.* ¶¶ 31-41. Specifically, Shockwave contends that Defendants breached the parties' agreement to safely deliver the scanners.

*See id.* ¶ 37. In response, CargoBarn brought its Motion to Dismiss, contending that Shockwave's breach of contract claim is actually a tort claim that is preempted by the Federal Aviation Administration Authorization Act (the "Act"). *See* Doc. 11, Mot. ¶¶ 3-4.

The Court considers the Motion below.

**II.**

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Nevertheless, in considering whether the plaintiff has stated a claim, courts "must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Breaux v. Worrell*, 141 F.4th 712, 716 (5th Cir. 2025) (citation omitted).

Federal preemption is normally raised as an affirmative defense, for which the defendant bears the burden of proof. *See Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citations omitted). When a defendant raises a federal preemption defense in a motion to dismiss under Rule 12(b)(6), the defense, like any affirmative defense first raised in a motion to dismiss, is limited to allegations contained in the complaint. The complaint must "establish[] the applicability of a federal-preemption defense" on its face. *Id.* (citation omitted).

## III.

## ANALYSIS

The Court first considers whether Shockwave's single cause of action for breach of contract should be reconstrued as a tort claim. It should not. The Court then considers whether Shockwave's breach of contract claim is nevertheless pre-empted by the Act. It is not. Accordingly, the Court denies CargoBarn's Motion.

### A. *Shockwave's Claim, Properly Construed, Arises Out of Contract.*

The Court must first determine whether Shockwave's claim, properly construed, is one for breach of contract or tort. On its face, the Amended Complaint brings a claim for breach of contract. *See* Doc. 8, Am. Compl. ¶¶ 31-41. But under Texas law, "[i]t is well established that the nature of a plaintiff's pleaded cause of action is determined by its substance, not by the label the plaintiff gives it." *Quinn v. Nat'l Med. Enters.*, No. 05-98-01403-CV, 2001 WL 767562, at *3 (Tex. App.—Dallas July 10, 2001, no pet.) (first citing *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998); and then citing *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994)). So, the Court looks to the substance of Shockwave's sole cause of action. A tort claim masquerading as a breach of contract claim is still, in actuality, a tort claim.

Whether a claim arises out of contract or tort is a question that often arises when a defendant invokes the "economic loss rule." That rule, not applicable in this case, "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). In cases where the economic loss rule applies, parties argue over whether a purportedly independent tort claim is in

reality based on a contractual duty. *See, e.g.*, *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 291-94 (5th Cir. 2016). Here, the Court addresses the converse: whether Shockwave's contract claim, properly construed, is really a tort claim—i.e., whether it arises out of a duty independent of the contract (a common-law imposed standard of care).

Despite the economic loss rule's inapplicability here, its methodological framework is useful in classifying Shockwave's claim. Under Texas law, "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* at 292 (quoting *Chapman*, 445 S.W.3d at 718). So, courts often look to the nature of the injury. If the alleged injury gives rise to liability independent of the parties' contract, it "may also sound in tort." *Id.* (citation omitted). But "[i]f the only duty between parties arises from a contract, a breach of this duty ordinarily sounds only in contract, not in tort." *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 421 (Tex. App.—Fort Worth 2014, no pet.) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

Considering those principles, the Court must construe Shockwave's claim as one for breach of contract. Shockwave's allegations related to the contract's terms are sparse. It alleges an agreement between Shockwave and CargoBarn, under which CargoBarn agreed "to provide transportation services to safely deliver valuable and sensitive" scanning devices to TSA. Doc. 8, Am. Compl. ¶ 1. Specifically, the parties' agreement required CargoBarn to arrange transportation, including by providing a driver, and to "ensure the safe delivery of the scanners." *See id.* ¶¶ 12-13, 32. CargoBarn allegedly breached that agreement by failing to ensure safe delivery—specifically, by telling Canales to leave the scanners outside and thereby causing rain damage prior to final delivery. *See id.* ¶¶ 1, 21-22, 37. TSA required Shockwave to address that rain damage, which cost Shockwave over

$138,000. *See id.* ¶¶ 27-29. Shockwave thus alleges a duty specifically arising from the parties' agreement for safe delivery of the scanners. CargoBarn's alleged breach of that duty required Shockwave to incur mitigation costs that would not have resulted if it had obtained the promised contractual benefit (safe delivery). So, the duty alleged, and the injury sustained, support Shockwave's assertion that this is a breach of contract claim.

*B. The Act Does Not Preempt Shockwave's Breach of Contract Claim.*

Federal preemption doctrine is rooted in the Supremacy Clause of the United States Constitution. *See* Art. VI, cl. 2. The general idea of preemption is that federal law trumps state law; to the extent that a state law interferes with federal law, the state law is effectively nullified. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982). Preemption may be express, such as where Congress commands states not to regulate a given industry, or implied, based on a federal law's structure and purpose. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (other citation omitted) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 56-57 (1990)).

Importantly here, federal preemption is not limited to state statutes and regulations. State common-law damages actions, premised on the existence of a legal duty, are also "state law" for preemption purposes. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521-22 (1992). However, the Supreme Court has found that a mere common-law remedy for a "contractual commitment" between parties is not "imposed under [s]tate law." *See id.* at 526.

The federal law at issue here is the Act's preemption provision, 49 U.S.C. § 14501(c)(1), which expressly preempts any state from enacting or enforcing a "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."

In *Rowe v. New Hampshire Motor Transport Association*, the Supreme Court held that § 14501(c)(1) should be read expansively to preempt any state law with even an indirect effect on a motor carrier's (or motor-carrier broker's) *rates, routes, or services*. *See* 552 U.S. 364, 370-71 (2008).

CargoBarn contends that the Act, by § 14501(c)(1), preempts Shockwave's claim here because it relates to CargoBarn's services "as a licensed freight broker." Doc. 11, Mot. ¶ 4. Specifically, CargoBarn argues that Shockwave's breach of contract claim is really a negligence claim that seeks to "dictate the manner in which the broker provides services" including "the selection of a carrier." *Id.* ¶ 18. "Regardless of how [Shockwave] attempts to classify its claim[]," CargoBarn explains, it is "directly related to CargoBarn's alleged negligent hiring or selection" of a motor carrier and is thus preempted by federal law. *Id.* ¶¶ 19-20.

Although CargoBarn characterizes Shockwave's claim as one for negligent hiring, the Court has already determined that Shockwave's claim is properly classified, at least at this stage, as one for breach of contract. But the Court still must decide whether Shockwave's breach of contract claim, as alleged, would be preempted.

As already noted, breach of contract claims, based on a contractual duty, are not normally considered "state law" subject to preemption. *See Cipollone*, 505 U.S. at 526. In fact, the Supreme Court has found statutory language in the Airline Deregulation Act ("ADA"), "relating to rates, routes, or services," not to preempt state-law-based adjudication of breach of contract claims as long as there is "no enlargement or enhancement [of the contract] based on state laws or policies external to the agreement." *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 232-33 (1995) (discussing 49 U.S.C. § 1305(a)(1)) (finding that, despite arguments that a breach of contract claim "differ[ed] only in [its] label[]" from a preempted consumer fraud act claim, the breach of contract claim would not be

preempted because it was based on private contractual duties). And although *American Airlines* was construing the ADA's preemption provision, the Supreme Court has since held that given its identical language, the Act's preemption provision should be interpreted in the same way. *See Rowe*, 552 U.S. at 370.

In light of these precedents, courts in this district have had little trouble concluding that the Act did not preempt breach of contract claims. *See, e.g.*, *Adame v. Echo Glob. Logistics, LLC*, No. 3:21-CV-1464-L, 2022 WL 272121, at *1, 6 (N.D. Tex. Jan. 12, 2022) (Horan, Mag. J.) (finding claim that motor-carrier broker breached contract with driver by making driver transport barrels full of hazardous material when he had agreed only to transport empty barrels was not barred by the Act), *report and recommendation adopted*, 2022 WL 270857 (N.D. Tex. Jan. 28, 2022) (Lindsay, J.); *Wise Recycling, LLC v. M2 Logistics*, 943 F. Supp. 2d 700, 701, 705 (N.D. Tex. 2013) (Solis, J.) (finding claim that motor-carrier broker breached contract by failing to protect cargo from theft while en route with the driver was not barred by the Act); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 640, 643 (N.D. Tex. 2010) (Lindsay, J.) (finding claim that motor-carrier broker breached contract by failing to have the driver use a refrigerated truck (and thereby ruining a wine shipment) was not barred by the Act).

The Court finds that Shockwave's breach of contract claim is not preempted by the Act. Like in *Chatelaine*, Shockwave alleges that a motor-carrier broker, CargoBarn, breached the parties' contract by failing to protect the cargo while the goods were en route with a third-party motor carrier. *See* 737 F. Supp. 2d at 639-40. That duty is not "enlarge[d] or enhance[d] based on state laws or policies external to the agreement." *Am. Airlines*, 513 U.S. at 233. Indeed, Shockwave does not,

anywhere in the Amended Complaint, address or invoke substantive state law—Shockwave's claim instead invokes the parties' private agreement. Therefore, there is no "state law" to preempt.

CargoBarn identifies a single case, *JRP International, Inc. v. Landa Group Inc.*, in which a district court in the Southern District of Texas found that a breach of contract claim was preempted by the Act. *See* No. 7:17-CV-263, 2018 WL 4334017, at *4 (S.D. Tex. Mar. 1, 2018). *JRP* appears to be an outlier, and it does not bind this Court. Even so, *JRP* is readily distinguishable from the present action. *JRP* held that although the plaintiff had alleged breach of contract, "the claims d[id] not exclusively involve privately negotiated terms between the parties" because they were based specifically on the defendant's "alleged failure to select a 'competent, trustworthy, or reliable carrier.'" *See id.* In contrast, Shockwave alleges a general contractual duty to provide safe transportation and delivery of the scanner.

## IV.

## CONCLUSION

CargoBarn's Motion to Dismiss (Doc. 11) is **DENIED**. Shockwave's claim will proceed.

**SO ORDERED.**

**SIGNED: August 5, 2026.**

____________________________________
**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**